IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILKINS ROMAN SAMOT<br>Plaintiff<br><br>v.<br><br>PONTIFICAL CATHOLIC UNIVERSITY<br>OF PUERTO RICO<br>Defendant | Civil No. 10-cv-01879 (SEC)<br><br>Action In Torts<br>Breach of Contract<br><br>Title VII Sexual Harassment<br><br>Retaliation<br><br>TRIAL BY JURY REQUESTED |

## AMENDED COMPLAINT[1]

MAY IT PLEASE THE COURT:

Now into Court come plaintiff, Wilkins Román Samot, through the undersigned counsel, and most respectfully states and prays as follows:

I.   **JURISDICTION AND VENUE**

This district has Diversity Jurisdiction over this civil action since the matter in controversy exceeds the sum or value of $75,000.00 exclusive interests and costs between plaintiff, a citizen of the Brooklyn, New York City, State of New York, and defendant, a citizen of the Commonwealth of Puerto Rico.

This Court also has federal question jurisdiction under Title VII, 42 U.S.C. § 2000e-2(a).

Venue is proper in this District since the Commonwealth of Puerto Rico is the location were the common nucleus of operative facts took place that supports this complaint.  Thus, jurisdiction and venue is invoked under 28 U.S.C. §§ 1331, 1332 and 1391(a).

II.   **THE PARTIES**

A.   The Plaintiff

Plaintiff Wilkins Roman Samot, is a resident of 274 Wilson Ave., 3rd Floor, Brooklyn,

---

[1]
This case was originally filed on or around 8/1/2009 under docket number 09-cv-1734, and dismissed without prejudice on 8/4/2009.

N.Y., 11237.

At all times relevant to this complaint, Plaintiff was an employee of the Pontifical Catholic University of Puerto Rico.

B.    **The Defendant**

Defendant Pontifical Catholic University of Puerto Rico (from hereon "PCUPR" or the "university") is a non-profit corporation incorporated in Puerto Rico with its principal place of business in Ponce,  Puerto Rico.

At all times relevant to this complaint, defendant PCUPR was the employer of the Plaintiff.

III.    **RELEVANT FACTS**

1.    The previous allegations of this complaint are incorporated herein by reference.

2.    At all relevant times to this complaint, Plaintiff was an employee of the defendant Pontifical Catholic University of Puerto Rico (from hereon, "PCUPR").

3.    Plaintiff's position was that of Professor of Social Sciences ("Claustral en Ciencias Sociales").

4.    Plaintiff worked under the supervision of Felix A. Ramos González, Director of the Social Sciences Department and Carl B. Saunder, Vice-President of Academic Affairs.

5.    Plaintiff worked for the PCUPR from January 2007 to July 31, 2008, the effective date of his unlawful dismissal.

6.    Plaintiff was hired as  Professor for the PCUPR  based on the premise that he would be continuously employed on an annual basis, and that he would be a candidate for a tenure track position with the university since he was academically qualified with a Juris Doctor, the equivalent to a Ph.D.

7.    The rules and regulations of the PCUPR relative to the hiring and retention of university professors ("Manual del Clautro de la PCUPR") , among other internal memorandums, in addition to other norms established by the Catholic Church, govern the contractual relationship between the parties.

8.   At all times relevant to this complaint, Plaintiff shared his office at the PCUPR with Professor Otto Sievens Irizarry.

9.   From the first months of the year 2007, a constant subject of Professor Sievens Irizarry conversations with the Plaintiff was that of the sexual conduct of graduate students in the bathrooms of the PCUPR. Professor Sievens referred to gay students engaging in sexual conduct in the men's bathrooms.

10.  Whenever Professor Sievens engaged in this type of conversations, Plaintiff made him aware that he rejected the subject, considered it to be offensive, and that it was totally unwanted. Politely but firmly, Plaintiff asked Professor Sievens to either change the subject, or simply stop the conversations.

11.  On or Thursday April 26, 2007, Professor Sievens escalated the offensive homosexual conduct towards the plaintiff, from conversations to an invitation to go to the men's bathroom and masturbate in front of him.

12.  After Plaintiff strongly rejected Professor Sievens offensive homosexual suggestion, Professor Sievens threatened the Plaintiff with retaliation with the statement "this [rejection] will have consequences." At the time, and apparently to this date, Professor Sievens was and continues to be the Chairman ("Presidente") of the Evaluations Committee of theSocial Sciences Department. This fact implied that this committee under Professor Sievens direction would evaluate the plaintiff's scholastic performance for a renewal of his contract and for his potential tenure track position as a full time professor at the PCUPR.

13.  The following Monday, April 30, 2007, Plaintiff filed an oral complaint regarding the events of April 26, 2007 described above, with the Dean of the Social Sciences Department, Professor AlfonsoSantiago Cruz, instead ofhis immediate supervisor, Prof. Ramos González, in light of the fact that the second does not deny is gay. At this time, Plaintiff advised Dean Santiago Cruz that if the university did not take remedial actions immediately, he would take legal action.

14.  Dean Santiago Cruz's relief to Plaintiff's complaint was an agreement to getting a

key to the men's bathroom, and removing Professor Sievens Irizarry from the evaluations board effective the following semester, in order to prevent retaliatory action by Professor Sievens. Also, as part of the agreement, Dean Santiago would forward the complaint to Chaiman of the Institutional Mission, PCUPR's internal forum where complaints like this are filed, so that they could initiate an investigation leading to the expulsion of Professor Sievens Irizarry to be initiated the following semester. Grounds for thedismissal where blatant violations to theuniversity's rules and regulations, and more importantly, against the Canonic Code.

18.   Given the verbal  agreements reached between Dean Santiago Cruz and the Plaintiff, Plaintiff did not pursue the complaint against Professor Sievens Irizarry and the PCUPR through additional legal channels, since the end result was that he (Professor Sievens) would not be in a position to retaliate against him, and an investigation leading to his dismissal was forthcoming.

19.   Much to Plaintiff's  chagrin, early the following semester, on or about late August, early September of 2007, Dr. Sievens Irizarry was again named Chairman of the Evaluations Committee, in breach of agreement with Dean Santiago Cruz. Plaintiff also became aware that there would be no investigation against Professor Sievens that would lead to his expulsion. As a result, Plaintiff was greatly distressed, and pursued enforcement of the agreement.

20.   Days after Dr. Sievens Irizarry was again appointed as Chairman, andafter realizing that the agreement with Prof. Santiago Cruz was breached,  Plaintiff renewed his complaint to him.  Again,  Dean Santiago Cruz agreed to request an investigation leading to the expulsion of Professor Sievens Irizarry.

21.   Barely days thereafter, Dr. Félix Ramos, plaintiff's immediate supervisor and Director of the Social Sciences Department, commented to the Plaintiff that he (the plaintiff) should forget about any committee investigating Dr. Sievens Irizarry , because otherwise, being gay,  he was also subject to dismissal.

22.   Between August 2007 and March 2008, Dr. Sievens bragged to the Plaintiff that he

was untouchable, since other high echelon officials of the PCUPR also had a history of violations to the Canonic Code and the university's rules and regulations regarding misconduct, and specifically named Monsignor Lázaro Martínezas having an out of wedlock son.

23.  On January 9, 2008, Plaintiff met with the Associate Dean of the PCUPR law school, Dr. Juan D. Vilaró Colón, in  order to confirm if he was going to teach a class of the history of the Puerto Rico legal system.  Dr. Vilaró responded that the class was short of one student.  Dr. Vilaró then suggested two solutions: the first, to find a tenth student; the second, flunk a law school student identified as Jorge Irizarry Rodríguez, a law school student leader and activist. Plaintiff responded informing Dr. Vilaró Colón that he would not agree to flunk Jorge Irizarry Rodríguez when classes had not even started, and that he reserved the right to so inform the law school student.

24.  When Plaintiff appeared at the classroom and the scheduled hour for his first day of class, he learned that the PCUPR law school administration had cancelled the class without first informing him.

25.  Between January and March, 2008, Plaintiff has joined Father Pacho Boj and law school student Jorge Irizarry Rodríguez in requesting to the Apostolic Nuncio, Monsignor Josef Wesolowski, the investigation of various violations of the PCUPR rules and regulations, Canonic Law and various decrees issued by the Vatican, by high ranking officials of the university, related to proper moral conduct, and the Church's ban to homosexual conduct. The Apostolic Nuncio has the power similar to an Inspector General un the Catholic Church, and is the Pope's representative in the Caribbean countries and Puerto Rico.

26.  Setting the stage for this eventual dismissal, on March 6, 2008, Plaintiff was informed by Prof. Ramos González that allegedly a student of his had filed a complaint against him because he had called him/her a "pendejo" in class following a discussion about the death penalty.  Plaintiff responded denying that the event

took place.

27.  On March 14, 2008, Plaintiff received notice that he would be evaluated by the evaluation committee presided by Chairman Sievens Irizarry on March 19, 2008. He was also advised that his evaluation would be based on student evaluations.

28.  Also on that date of March 14, 2008, plaintiff was informed that two other students had complained against him for failure to attend and teach the classes.

29.  On or around March 14, 2008, Plaintiff was provided with conflicting information to the effect that since he had been evaluated the previous semester, a second evaluation was not needed.

30.  On March 17, 2008, Plaintiff met with members of the evaluation committee, Professor Ramos González and Reyes Rodríguez at the office of Profession Santiago Cruz, whom was also present. At this time, instead of addressing Plaintiff's evaluation, the tried to persuade him to discontinue all communications to the Apostolic Nuncio, in a clear attempt to engage in a prior restraint. The meeting eventually heated up, and was terminated by Professor Santiago Cruz in order to allow tempers to cool of.

31.  On May 8, 2008, Plaintiff received from Professor Carl E. Sauder, Vice-President of Academic Affairs, a letter informing him his termination effective July 31, 2008. As grounds for the letter, Professor Sauder informed that it was based on the evaluation of Professor Otto Sievens Irizarry, and the other two members of the committee, Professor Ramos González and Reyes Rodríguez. As a pretext for the termination Plaintiffs services, thecommittee argued that Plaintiffhadlied about his credentials, and that his Juris Doctor was not the equivalent to a Ph.D. required to teach at the university.

IV.  **CAUSES OF ACTION**

32.  The allegations previously stated are incorporated herein by reference.

33.  Plainttiff was the victim of unwanted homosexual harassment by Professor Otto Sievens. Defendant PCUPR administration knew of this unlawful conduct by

Professor Sievens when the Plaintiff complained to them. The PCUPR promised and failed to investigate the event, and in fact, by failing to investigate the event, defendant has in fact condoned it, all in violation of Title VII.

34.    Defendant also engaged in retaliatory action by not renewing the contract with the Plaintiff under a pretext that he had misled the PCUPR by stating that he qualified for the position by  having a Juris Doctor.

35.    Defendant also breached Law 115 and other Puerto Rico statutes that prohibits retaliation to whistleblowers.

36.    Defendant, by the administrator actions and omissions, caused Plaintiff pain and suffering estimated in no less than one million dollars, under Article 1802 and 1803 of Puerto Rico's Civil Code.

WHEREFORE, and in view of the foregoing, Plaintiff requests from this court to declare and find that the defendant violated the above mentioned statutes, and grant as compensation the amount of no less than one million dollars.  Plaintiff also requests the imposition of reasonable attorney fees and costs.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this 20th day of March 2011.

S/Manuel R. Suárez Jiménez
Manuel R. Suárez Jiménez
U.S.D.C.-P.R. #202914
LAW OFFICE OF MANNY SUAREZ
Attorney for Plaintiff
P.O.  Box 11096 San Juan,
Puerto Rico 00910-2196
Phone (787) 504-6035
mannysuarezlaw@hotmail.com